CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 25 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD AREHART, | ) CASE NO. 7:12-cv-215 |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| vs. | ) |
| GREGORY HOLLOWAY, ET AL., | ) By: James C. Turk |
| | ) Senior United States District Judge |
| Defendants. | ) |

Ronald Arehart, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant prison officials violated his First and Fourteenth Amendment rights by disciplining him for not shaving his beard, despite their knowledge that shaving violates his religious beliefs. Defendants have filed a Motion for Summary Judgment (ECF No. 16), asserting that Plaintiff failed to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a). The Clerk issued a Roseboro[1] notice to Plaintiff and Plaintiff responded, making the matter ripe for disposition. After review of the record, the Court grants Defendants' motion under § 1997e(a) as to Defendant Holloway, but denies it as to Defendant Jennings.

I.   FACTS

A. Events Underlying Plaintiff's Allegations

Ronald Arehart, a/k/a Hasan Bayadi, is a "White Muslim." He abides by the "Shari'ah Laws of Islam," which require that he not shave his beard. Plaintiff alleges that on February 24, 2012, staff at the Augusta Correctional Center ("ACC") gave him a direct order to shave his

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975)

beard, which he refused to do on religious grounds. As a result, staff at ACC charged him with disobeying an order. On March 23, 2012, staff charged him again with refusing to shave and failing to abide by the institution's grooming policy. Plaintiff alleges that the ACC warden, Defendant Jennings, then punished him more severely than was warranted by placing him in segregation, raising his security level from #4 to #5, and transferring him on April 20, 2012 to Wallens Ridge State Prison ("WRSP").

Since his arrival at WRSP, Plaintiff alleges that Defendant Holloway, warden at WRSP, has continued treating him like a "disciplinary inmate" and kept him in segregation. Although there is a special housing unit at WRSP for prisoners who fail to follow the grooming policy for religious reasons, Plaintiff has not been allowed to enter that unit. Plaintiff alleges that the reason he was not assigned to the unit is that Holloway "does not want a Muslim in that unit." Finally, Plaintiff alleges that WRSP staff have told him twice that Muslims have no rights at WRSP.

### B. VDOC Grievance Procedures

Because Defendants allege Plaintiff failed to exhaust his administrative remedies, it is necessary to detail the administrative remedy procedure of the Virginia Department of Corrections ("VDOC"), set out in Operating Procedure 866.1 ("OP 866.1"). An inmate must first make a good faith effort to informally resolve his grievance about an incident by submitting an informal complaint. If dissatisfied with the response to his informal complaint, the inmate may then file a regular grievance within 30 days of the incident, with the informal complaint and response attached.

OP 866.1 provides three levels of review for regular grievances. The Warden or Superintendent of the facility conducts Level I reviews and must respond to the regular grievance within 30 days. When the Level I review paperwork is returned to the inmate, it includes the title

and address where the inmate may forward his appeal if he is dissatisfied with the Level I response. The Regional Director provides Level II review of grievances not related to medical care or time computation. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance.

All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal Court decisions, laws and regulations, and other matters beyond the control of the VDOC. Those grievances that do not meet the filing requirements of OP 866.1 are returned to the offender within 2 working days from the date of receipt noting the reason for the return on the intake section of the grievance form. The offender is instructed how to remedy any problems with the grievance when feasible. A copy is made of all grievances and returned to the offender with the justification for return noted on the second page of the grievance form. If an offender wishes review of the intake decision on any grievances, he may send the grievance to the applicable Regional Ombudsman for a determination. There is no further review of the intake decision.

### C. Plaintiff's Grievance Attempts

As to the events at ACC, Plaintiff attempted to file a regular grievance on March 16, 2012, in which he complained about being charged for not shaving and desiring a return to the General Population without shaving his beard. The grievance was not accepted for intake because disciplinary charges are not grievable. (ECF No. 17-2 at 9.) Plaintiff appealed the intake decision to the Regional Ombudsman, who upheld the decision. (ECF No. 17-2 at 11.)

As to the events at WRSP, on May 15, 2012, Plaintiff attempted to file a regular grievance regarding being punished for being a white Muslim by being placed in segregation and not being allowed to grow a beard. (ECF No. 17-4 at 8.) The grievance was received on May 17,

2012, but it was not accepted for intake because of insufficient information. Plaintiff was advised to resubmit the grievance with a copy of his ICA form. (ECF No. 17-4 at 9.)

Warden Holloway then responded to a written request from Plaintiff on or about May 18, wherein Holloway informed Plaintiff that he had to remain non-compliant with the grooming policy for one year before he would be eligible to enter the special housing unit. (ECF No. 17-4 at 13.) Plaintiff then filed an informal complaint on May 20, 2012 and received a response from Unit Manager Farris on May 24, explaining that Warden Holloway was correct, and in any event, the unit was currently full. (ECF No. 17-4 at 13.) Plaintiff then filed a regular grievance on May 24 and Warden Holloway conducted the Level I review, completing it on June 14. Warden Holloway's response essentially affirmed what Unit Manager Farris had said. (ECF No. 17-4 at 11.) Plaintiff did not appeal to Level II.

## II.     LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Nussle v. Porter, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the state provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006).

III. ANALYSIS

### A. Claims Against Jennings for Events at ACC

Plaintiff's March 16 grievance at ACC was not accepted for intake because disciplinary charges are not grievable. Plaintiff appealed the decision not to accept his grievance for intake, but the Regional Ombudsman upheld the decision. Sandra Connor, the custodian of the grievance records at ACC, stated, "[t]here is no further review of the intake decision." The PLRA merely requires that a prisoner exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Defendants assert in their brief that Plaintiff "submitted no grievances concerning the alleged actions by Jennings," but offer no explanation as to how Plaintiff did not exhaust his remedies. Plaintiff appealed the denial of intake and the Regional Ombudsman denied the appeal. No other appeal was available to Plaintiff. Therefore, Plaintiff exhausted his claims against Jennings and Defendants' motion is denied as to claims against Jennings.

### B. Claims Against Holloway for Events at WRSP

It is uncontroverted by the Plaintiff that he failed to pursue his appeal past Level I, despite the instructions for appeal to Level II being clearly written on the Level I grievance response. (ECF No. 17-4 at 11.) Because Plaintiff did not exhaust "such administrative remedies as are available," the PLRA bars his § 1983 claims. Therefore, the Court grants summary judgment on claims against Defendant Holloway for failure to exhaust as required by 42 U.S.C. § 1997e(a).

IV. CONCLUSION

For the stated reasons, the Court grants defendants' motion for summary judgment under § 1997e(a) as to Defendant Holloway, but denies the motion as to Defendant Jennings. An appropriate order will enter this day.

5

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the pro se Plaintiff and counsel of record for the Defendants.

ENTER: This 25th day of September, 2012.

Hon. James C. Turk
Senior United States District Judge